IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | |
|---|---|
| ANTONIO DWAYNE LEWIS,<br><br>Plaintiff,<br><br>vs.<br><br>INTELIFI, INC,<br><br>Defendant. | Civil Action No.: 2:25-cv-2681<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

Antonio Lewis ("Plaintiff" or "Mr. Lewis") by and through his counsel brings the following Complaint against Intelifi, Inc., ("Defendant" or "Intelifi") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as convicted of a misdemeanor for driving under the influence ("DUI").

## INTRODUCTION

1.  This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.  Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.  Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was

convicted of a misdemeanor for a DUI. Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff has never been charged with a crime in his life.

5. Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate misdemeanor conviction, which does not belong to Plaintiff.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available public court records from Nottoway County, Virginia regarding the misdemeanor conviction prior to publishing Plaintiff's report to his prospective employer.

7. Had Defendant performed even a cursory review of the public court records, it would have discovered that the criminal record belongs to a different consumer who is wholly distinguishable from Plaintiff by their middle name and date of birth and even reside in a different part of the country from Plaintiff.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort

disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

13. Antonio Dwayne Lewis ("Plaintiff" or "Mr. Lewis") is a natural person residing in Memphis, Tennessee and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant Intelifi, Inc. ("Defendant" or "Intelifi") is a California corporation doing business throughout the United States, including the State of Tennessee and in this District, and has a principal place of business located at 8730 Wilshire Boulevard, Suite 412, Beverly Hills, California 90211.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

33. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor conviction that belongs to an unrelated consumer who has a different middle name and date of birth than Plaintiff.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS
### Plaintiff Applies for a Job with Staffline

40. On or about May 22, 2025, Plaintiff interviewed at a staffing agency, Staffline, Inc. ("Staffline") located in Memphis, Tennessee.

41. Staffing agencies connect employers with qualified job candidates, helping businesses fill temporary, contract, or permanent positions efficiently.

42. Upon information and belief, Staffline is well-known for having many positions working in warehouses and industrial buildings which Plaintiff has experience in.

43. Upon applying to Staffline, Plaintiff successfully completed an interview and passed a drug test.

44. Plaintiff was interviewed by a woman named Christine Boyd ("Christine"). After Plaintiff's interview and passing the drug test, he authorized Staffline to run his background check.

45. Plaintiff anticipated no issues with his background report since he had no criminal

records whatsoever.

46. Upon information and belief, on or about May 22, 2025, Staffline extended a verbal job offer to Plaintiff. The job offer was conditioned upon Plaintiff passing a background check ("consumer report.")

**Defendant Published an Inaccurate Background Check Report to Staffline**

47. Staffline contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

48. On or about May 22, 2025, Staffline ordered a criminal background check on Plaintiff from Defendant.

49. On or about May 22, 2025, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Staffline.

50. Within that consumer report, Defendant published inaccurate information about Plaintiff.

51. Specifically, Defendant's consumer report about Plaintiff included a grossly inaccurate and stigmatizing misdemeanor DUI conviction from Nottoway County, Virginia which appeared in the consumer report as follows:



52. The criminal conviction reported by Defendant about Plaintiff to Staffline ***does not*** belong to Plaintiff.

53. Plaintiff has never been charged with or convicted of a misdemeanor crime in his life.

54. A cursory review of the widely available public court records confirms that the records belong to an unrelated male, Antonio Devon Lewis ("Convicted Felon Lewis").

55. Had Defendant actually consulted or obtained the widely available public court records regarding the conviction, it would have seen obvious discrepancies between Convicted Felon Lewis and Plaintiff.

56. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Lewis include the following:

    (a) Plaintiff's legal name is "Antonio Dwayne Lewis" (middle name is Dwayne) and the criminal records belong to a "Antonio Devon Lewis," which is both clearly indicated on the face of the consumer report and in the

9

widely available public records from Nottoway County, Virginia;

(b) Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject consumer report, is July, 11 1991, yet the public court records indicate that Convicted Felon Lewis's date of birth is July 11, 1983.

(c) Plaintiff resides in Tennessee, which is confirmed and clearly indicated on the face of the subject consumer report, yet the public court records regarding the criminal conviction indicate that Convicted Felon Lewis resided in Burkeville, Virginia at the time he committed the offenses; and,

(d) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject consumer report is entirely different than that of Convicted Felon Lewis.

57. The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

58. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal conviction belonged to an unrelated individual with a different middle name than Plaintiff, a different date of birth, a different Social Security Number, and who resides in a different part of the country than Plaintiff.

59. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

10

## Staffline Denies Plaintiff's Job Application

60. On or about May 22, 2025, Plaintiff was notified by Staffline that his employment application was denied as a direct result of the misdemeanor conviction reported by Defendant.

61. Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked and humiliated upon reviewing and realizing that the serious criminal conviction of another, namely Convicted Felon Lewis, was published in the consumer report Defendant sold about Plaintiff to Staffline.

62. Plaintiff contacted Staffline and informed them that he has never lived in Virginia, that he is not Convicted Felon Lewis, that his middle name is not Devon, that he has a different social security number and date of birth from that of Convicted Felon Lewis. Plaintiff explained that the serious criminal conviction of Convicted Felon Lewis does not belong to him.

63. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Lewis's serious criminal conviction reported on the subject consumer report – specifically, the impact of the same on his future.

64. Specifically, Defendant matched Plaintiff and Convicted Felon Lewis and published the criminal record of Convicted Felon Lewis onto the consumer report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Staffline, but Defendant failed to perform even a cursory review of such information.

## Plaintiff's Damages

65. Plaintiff continued to follow up with Staffline in hopes that the job offer would be reinstated, however, Staffline did not renew its job offer to Plaintiff.

66. On or about May, 27, 2025, Plaintiff even returned to Staffline with his birth certificate as proof that the Intelifi report was wrong.

11

67. Upon information and belief, Staffline told Plaintiff he could not be placed in a role or even discuss potential employment due to Defendant's false report.

68. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Staffline formed a negative opinion about Plaintiff and/or moved on to other candidates.

69. Defendant's false report cost Plaintiff a promising, well-paying job with Staffline.

70. Plaintiff was excited to for his placement through Staffline because he was qualified to successfully perform the work and was eager to begin a new work opportunity. Specifically, Plaintiff has the necessary certifications and experience to drive a forklift. .

71. Upon information and belief, the inaccurate Intelifi report has delayed Plaintiff's employment opportunities. Plaintiff is worried if he applies elsewhere, the same inaccurate record will appear again.

72. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

73. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

74. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

75. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

76. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

77. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

78. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

79. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

80. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

81.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: July 1, 2025,                    */s/ Tarek N. Chami*
                                        Tarek N. Chami, MI Bar #P76407
                                        **CONSUMER JUSTICE LAW FIRM PLC**
                                        835 Mason St, Suite C349
                                        Dearborn, MI 48124
                                        T: (313) 447-0488
                                        E: tchami@consumejustice.com

                                        *Counsel for*
                                        *Antonio Dwayne Lewis*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on July 1, 2025. Parties may access this filing through the Court's electronic filing system. Notice of this filing will also be sent to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

                      **CONSUMER JUSTICE LAW FIRM**

                      By: */s/Moises Masedman*
                      Moises P. Masedman